UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACY A. on behalf of D.T.,

                               Plaintiff,

                v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,

                        Defendant.
_____

**DECISION
and
ORDER**

**21-CV-1024F**
(**consent**)

APPEARANCES:       LAW OFFICES OF KENNETH R. HILLER, PLLC
                        Attorneys for Plaintiff
                        KENNETH R. HILLER, and
                        MARY ELLEN GILL, of Counsel
                        6000 North Bailey Avenue, Suite 1A
                        Amherst, New York  14226

                        TRINI E. ROSS
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York  14202
                                and
                        JEREMY ASEN LINDEN
                        Special Assistant United States Attorney, of Counsel
                        Social Security Administration
                        Office of General Counsel
                        26 Federal Plaza – Room 3904
                        New York, New York  10278
                                and
                        CHRISTOPHER NELSON HURD,
                        Office of Program Litigation, Office 2
                        Office of General Counsel
                        Social Security Administration
                        6401 Security Boulevard
                        Baltimore, Maryland  21235

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On November 16, 2023, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 8, 2022 (Dkt. 9), and by Defendant on January 5, 2023 (Dkt. 10).

## BACKGROUND

Plaintiff Tracy A. ("Plaintiff"), on behalf of her minor child, D.T. ("D.T." or "the Applicant"), brings this action under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying D.T.'s application ("the application") filed with the Social Security Administration ("SSA"), on January 7, 2020, for Social Security Supplemental Income ("SSI") under Title XVI of the Act pursuant to the standard applicable to children under the age of 18 ("disability benefits").  Plaintiff initially alleged D.T. became disabled upon her birth on July 19, 2014, based on conditions diagnosed at birth including brachial plexus palsy  ("Nerve damage to right arm, right arm is 70% functional, some finger movement/not normal, had surgery to move nerves from back of her leg to her neck"), laryngomalacia[2] ("may choke sometimes when she swallows, her lungs collapsed earlier"), and thickness of heart.  AR[3] at 199, 237, 241.  Because there

---

[2] On the application, Plaintiff reported this condition as "maligna malattia," which was clarified in a pre-hearing letter to the administrative law judge from Plaintiff's attorney.  AR at 314.

[3] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed in two parts by Defendant on March 9, 2022 (Dkts. 6 and 7).

had been a prior unfavorable administrative decision rendered on January 23, 2018 on a previous application, Plaintiff later amended D.T.'s disability onset date to January 7, 2020, the filing date for the current application.  AR at 15 (citing AR at 312-15).

The application initially was denied on March 2, 2020, AR at 89-96, and upon reconsideration on June 12, 2020.  AR at 99-110.  At Plaintiff's timely request, AR at 15, 113-27, on December 18, 2020, a hearing was held via telephone conference before administrative law judge Jason A. Miller ("the ALJ"), located in Falls Church, Virginia. AR at 32-51.  Appearing and testifying at the hearing were Plaintiff who testified on behalf of D.T., and Zachary Zabawa, Esq. ("Zabawa"), of counsel to Kenneth R. Hiller, Esq., Plaintiff's attorney.  Following the hearing, the ALJ held the record open to permit Zabawa to submit additional documents and treatment records which, when received, were added as exhibits to the administrative record.  AR at 15 (citing AR at 312).

On February 17, 2021, the ALJ issued a decision denying the claim, AR at 12-31 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 195-98.  On August 16, 2021, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-6.  On September 16, 2021, Plaintiff commenced the instant action on behalf of D.T. seeking judicial review of the ALJ's decision.

On August 8, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiffs' Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On January 5, 2023, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Memorandum in Support of Her

Motion for Judgment on the Pleadings and in Response to Plaintiff's Memorandum Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 10-1) ("Defendant's Memorandum").  Filed on February 16, 2023, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 11) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


**FACTS**[4]

The Applicant D.T., born on July 19, 2014, was 7 years old as of September 16, 2021, when she initially filed for disability benefits as a child, alleging her date of birth as her alleged disability onset date ("DOD"), based on congenital impairments, as well as on February 17, 2021, the date of the ALJ's decision.  AR at 1-6, 15, 25.  Because of her young age, D.T. has no past work experience.

It is undisputed that D.T. has a history of right obstetrical brachial plexus palsy which is a condition involving weakness or paralysis in parts of the arm as a result of birth trauma causing injury to the brachial plexus (network of nerves originating near the neck and shoulder providing sensory and motor control of the upper extremity).  On August 10, 2015, D.T. underwent a surgical procedure at Children's Hospital of Pittsburgh during which nerves were grafted from C5 and C6 to the upper and middle trunks located between the back of the neck and the scalene muscles at the side of the neck ("the surgery").  AR at 1001.  D.T. receives primary care at Niagara Street

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Pediatrics where she receives treatment for her brachial plexus palsy from Jeffrey J. Yu, M.D., Ph.D. ("Dr. Yu"), at a special needs clinic through which D.T. also receives occupational therapy and physical therapy.  AR at 44, 582-676.  D.T. has attended physical therapy and occupational therapy focusing on her right arm since pre-school, and on February 14, 2020, D.T. underwent an occupational therapy evaluation performed by occupational therapist Jennifer Welsh, MD OTR/L, to create an Individualize Education Program ("IEP") for use by D.T. upon entering kindergarten.  AR at 357-71.  As of the date of the administrative hearing, D.T. was a 1st grade student with an IEP, and was attending school in a virtual setting because of the pandemic.  AR at  1069-76.  D.T.'s cognitive skills were average, AR at 42, but she had difficulty paying attention in the virtual setting.  AR at 42-43.

Because of the pandemic, as of the date of the administrative hearing, D.T. was also receiving physical and occupational therapy in a virtual setting, rather than in person.  AR at 48.  It is undisputed that D.T.'s progress with physical and occupational therapy has been negatively affected by her inability to attend therapy sessions in-person.  AR at 48.  At the administrative hearing, Plaintiff testified that although D.T.'s use of her right arm was at 55% of normal prior to the pandemic, her use had fallen to 40% since her therapy sessions were switched to virtual.  *Id*. at 48.  Plaintiff further testified that she "truly believed [D.T.][5] is supported to be right-handed," but is being taught to write with her left hand and D.T.'s writing skills were below age level.  AR at 42.

---

[5] Unless otherwise indicated, bracketed material has been added.

D.T. has a history of treatment for asthma which Plaintiff, at the administrative hearing, described as "mild," explaining D.T. does not need to use an inhaler every day but only when she has a cold.  AR at 47.  After undergoing an in-patient assessment at the Asthma Clinic of Oishei Children's Hospital in Buffalo on October 9-10, 2019, the attending physician, Lucy C. Holmes, M.D. ("Dr. Holmes"), reported D.T. does not have asthma.  AR at 441-44.  In connection with D.T.'s disability benefits application, D.T.'s medical and school records were reviewed by State agency consultants including internal medical doctor I. Sinha, M.D. ("Dr. Sinha"), AR at 52-59, and pediatrician B. Stouter, M.D. ("Dr. Stouter"), AR at 62-71 (Dr. Stouter), both of whom found D.T. was not disabled.

## DISCUSSION

### 1.      Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  The definition of "disabled" is the same for purposes of receiving Social Security Disability Insurance and Supplemental Security Income benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal

error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).  Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2.      **Disability Determination**

Pursuant to the applicable regulations, in determining eligibility for disability benefits, the Commissioner must follow a five-step analysis for disability benefits for an adult, *i.e.*, age 18 or older, 20 C.F.R. § 416.920, *see Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986) (adult), and a three-step analysis for disability benefits for a child younger than age 18, 20 C.F.R. § 416.924, *see Miller v. Comm'r of Soc. Sec.*, 409 Fed.Appx. 384, 386 (2d Cir. 2010) (child).  For disability benefits as an adult, the five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting her mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1 ("the Listings"), and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite her collective impairments, retains the "residual functional capacity ("RFC") to perform her past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform her PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

For disability benefits as a child, the inquiry is similar but has only three steps including (1) whether the child is engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 416.924(b); (2) if the claimant has not been engaged in SGA, whether the child has a medically determinable impairment that is "severe," 20 C.F.R. § 416.924(c); and (3) if the child does have a severe impairment, whether such impairment meets or is medically or functionally equal to an impairment in the Listings.  With regard to the third step, to determine whether a claimant meets the "functional equivalence" of a listed impairment, the child's functional limitations are evaluated with regard to six domains of functioning ("domains of functioning," "functional equivalency domains," or "domains"), including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(i)-(vi).  A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two or more domains of functioning, or in an "extreme" limitation in at least one domain of functioning.[7]  20 C.F.R. § 419.926a(e)(2).

In the instant case, the ALJ found D.T. is a school-age child, AR at 16, has not engaged in SGA since January 7, 2020, the date of the application, *id*., and has the severe impairments of brachial plexus palsy of the right upper extremity and asthma. AR at 16-17, but that based on the objective medical records, the additional congenital

---

[7] A "marked" limitation is defined as more than moderate but less than extreme, with standardized testing scores at least two but less than three standard deviations below the mean, with day-to-day functioning in domain-related activities consistent with such score, and with regard to the domain of health and physical well-being, frequent episodes of illness or exacerbation of the impairments consistent with the regulations.  20 C.F.R. § 416.926a(e)(2) and (3).

conditions alleged by Plaintiff including laryngomalacia[8] and thickness of the heart are no longer present or symptomatic and thus, while such conditions may be medically determinable by history, at present they cause no more than minimal limitations.  AR at 17.  Nor did the ALJ consider obesity, referenced in a pediatric progress note, as limiting.  *Id*.  Further, despite a teacher questionnaire dated November 17, 2020, prepared by D.T.'s 1st grade teacher, James Weils ("Weils"), AR at 1069-76 ("teacher questionnaire"), indicating D.T. has significant limitations in two childhood functional equivalency domains including acquiring and using information, and attending and completing tasks, AR at 1073, the record was devoid of a diagnosis of any medically determinable mental or behavioral impairment accounting for such symptoms such that the limitations noted in the teacher questionnaire were not related to a medically determinable impairment.  *Id*.  In considering all the relevant evidence in the administrative record, the ALJ determined that D.T. has no limitation in the first three domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and a less than marked limitation in the last three domains of moving about and manipulating objects, caring for herself, and in health and physical well-being.  *Id*. at 18.  The ALJ thus found that D.T. does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 17-25.  Accordingly, the ALJ found D.T. has not been disabled as defined by the Act since January 7, 2020, the date Plaintiff filed the application.  *Id*. at 25.

---

[8] *See* Background, *supra*, at 2 n. 2.

In support of Plaintiff's Motion,[9] Plaintiff argues the ALJ's findings of less than marked limitations in the fourth functional equivalency domain of moving about and manipulating objects and the fifth functional equivalency domain of caring for oneself are unsupported by substantial evidence[10] given the ALJ determined Weils's teacher questionnaire was persuasive, but did not give credit to Weils's opinion that D.T. is significantly limited with regard to the fourth domain of moving about and manipulating objects for which the ALJ failed to develop the record by obtaining an examining opinion of D.T.'s physical limitations.  Plaintiff's Memorandum at 9-15.  Plaintiff further argues the ALJ did not adequately explain his finding that D.T. has a less than marked limitation in the fifth domain of caring for herself.  *Id*. at 15-18.  Defendant argues substantial evidence supports the ALJ's functional equivalence analysis because the ALJ reasonably concluded D.T. does not have the required domain limitations. Defendant's Memorandum at 6-9.  Defendant specified that the ALJ properly assessed the teacher questionnaire, *id*. at 9-14, no gaps in the administrative record required a third medical opinion, *id*. at 14-17, and the ALJ properly assessed the domain of caring for oneself and such assessment did not support a marked limitation in the domain.  *Id*. at 17-22.  In reply, Plaintiff advises no further argument is necessary.  Plaintiff's Reply at 1.  A fair reading of the record establishes that Plaintiff's arguments are without merit.

Regarding the fourth functional equivalency domain of moving about and manipulating objects, Plaintiff's first argument challenges as incorrect the ALJ's finding

---

[9] Because Plaintiff's argument in support of Plaintiff's Motion relies only on Denali's brachial plexus palsy, and not on Denali's asthma, the undersigned's review of the ALJ's decision is also limited to the limitations posed by Denali's brachial plexus palsy.

[10] Plaintiff limits her argument to the ALJ's determination that D.T. does not suffer at least a marked limitation in the fourth and fifth functional equivalency domains, and does not challenge the ALJ's determinations with regard to the remaining four domains.  *See* Plaintiff's Memorandum at 9.

that D.T. is less than markedly limited in such domain despite also determining Weils's

teacher questionnaire, in which Weils checked boxes indicating D.T. is "seriously"

limited in such domain was persuasive.  Plaintiff's Memorandum at 9-15.  In support of

this argument, Plaintiff relies on the definition of "marked limitation" pursuant to the

relevant regulation as a limitation that

> interferes seriously with your ability to independently initiate, sustain, or complete
> activities. Your day-to-day functioning may be seriously limited when your
> impairment(s) limits only one activity or when the interactive and cumulative
> effects of your impairment(s) limit several activities. "Marked" limitation also
> means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

As Defendant argues, however, Defendant's Memorandum at 6-14, the ALJ properly

assessed D.T.'s functional equivalency domain of moving about and manipulating

objects despite Weils's answers on the teacher questionnaire that D.T. had serious

limitations in the domain.

    In particular, on the teacher questionnaire, Weils was required to rate D.T.'s

ability to perform seven separate activities falling within the fourth domain of moving

about and manipulating objects.  AR at 1073.  Weils checked boxes indicating D.T. has

"an obvious problem" with "demonstrating strength, coordination, dexterity in activities or

tasks," "integrating sensory input with motor output," and "planning, remembering,

executing controlled motor movements."  *Id*.  Weils also checked boxes indicating D.T.

has "a serious problem" with "moving body from one place to another," "moving and

manipulating things," "managing pace of physical activities or tasks," and "showing a

sense of body's location and movement in space."  *Id*.  The ALJ, however, found D.T.

has a less than marked limitation in this domain.  AR at 24-25.

Weils's observations were made through 44 days of on-line observation of D.T. for whom school attendance was then virtual, rather than in-person because of the pandemic.  AR at 1069, 1071-72.  In finding D.T. has a "less than marked limitation" in this domain, the ALJ relied on other evidence in the record including the February 25, 2020 and June 8, 2020 assessments of the State agency consultants, Dr. Sinha and Dr. Stouter.  AR at 23.  Both Dr. Sinha and Dr. Stouter assessed D.T. with regard to all six domains, and found D.T. with a "less than marked" limitation in the fourth domain of moving about and manipulating objects.  AR at 56-57 (Dr. Sinha), and 67-68 (Dr. Stouter).  Significantly, consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence.  *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).

The ALJ's determination that D.T. had a less than marked limitation in the domain of moving about and manipulating objections is also supported by office and clinic notes from periodic examinations at Niagara Street Pediatrics.  For example, in an August 6, 2019 treatment note, pediatric nurse practitioner Tamara Tempfer reported D.T. had normal range of motion of her upper extremities, right arm was "in flexion" (flexed position) but that D.T. could lift her right ar to almost shoulder height and had good hand strength.  AR at 657.  In an October 9, 2019 treatment note, Dr. Holmes reported her physical examination of D.T. showed "no gross sensory deficits, right arm held in slightly flexed position."  AR at 652.  In a September 4, 2020 treatment note by

Dr. Yu, upon examining D.T., reported her right arm was pronated (palm faces to the rear with thumb next to the body), and flexed at rest, strength was 3/5, and full range of motion, and that D.T. used her left hand to assist with right-handed tasks.  AR at 645.

Similarly, school records pertaining to D.T.'s IEP, including physical and occupational therapy records as well as progress reports from D.T.'s kindergarten and first grade teachers support the ALJ's determination that Plaintiff did not have marked or extreme limitation in the domain of moving about and manipulating objects.  AR at 328-33.  In the Buffalo City School District 2018-2019 progress report, D.T. was reported as largely progressing either satisfactorily or gradually with regard to her occupational therapy and physical therapy intended to improve D.T.'s gross and fine motor skills involving her right upper extremity.  AR at 328-33.  Although D.T. continued to have some limited use of her right upper extremity, which interfered with her ability to run and to support herself on the monkey bars, *id*. at 329, D.T. was able to use both hands to climb a rock wall and to build a snowman, *id*. at 329, improved her cutting skills and achieved a goal of cutting out two simple shapes with scissors, *id*. at 330-31, was able to manipulate her pants to use the bathroom independently although she continued to have difficulty manipulating fasteners, *id*. at 331-32, and achieved the goals of ascending and descending stairs using a right-hand railing and reciprocal leg pattern. *Id*. at 332-33.

The ALJ's determination that D.T. had a less than marked limitation in the fourth domain of moving about and manipulating objects is thus supported by the record. Plaintiff further argues the ALJ failed to develop the record regarding D.T.'s limitations in the domain of moving about and manipulating objects by obtaining an examining

opinion of D.T.'s physical limitations, Plaintiff's Memorandum at 9-15, to which Defendant responds that no gaps in the administrative record required a third medical opinion.  Defendant's Memorandum at 14-17.

Plaintiff bears the burden of establishing D.T.'s functional limitations are more restrictive than the ALJ's determination.  *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5)); *Michael P. v. Comm'r of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations greater than those found by the ALJ).  An ALJ is not required to formulate a functional limitation that perfectly corresponds to a medical opinion in the record.  *See Curry v. Comm'r of Soc. Sec.*, 855 Fed.Appx. 46, 48 n. 3 (2d Cir. 2021) (because the RFC is an administrative finding, the ALJ is permitted to "consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination." (citing 20 C.F.R. §§ 419.927(c)(3), and 416.945(a))).  The Second Circuit "does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's [disability] determination."  *Swiantek v. Comm'r of Soc. Sec.*, 588 Fed.Appx. 82, 84 (2d Cir. 2015) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 33-34 (2d Cir. 2013) (absence of a medical source statement is not fatal to the ALJ's RFC formulation where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.").  Further, "a medical source statement is valuable in that it affords a physician the opportunity to explicitly assess a claimant's limitations and RFC,

which are necessary components of a fully developed record, but an ALJ need not always obtain one," including where a medical source's treatment "notes contain a comprehensive assessment of a claimant's RFC." *Reginald R. v. Comm'r of Soc. Sec.*, 2023 WL 5608869, at * 10 (W.D.N.Y. Aug. 30, 2023). In the context of determining whether a claimant for disability benefits is disabled within the meaning of the Act, where an ALJ's analysis regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, remand is not necessary merely because an explicit function-by-function analysis was not performed. *Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013). In short, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999 (quoting *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir.1996)). In the instant case, the ALJ based his findings and D.T.'s functional limitations on the extensive medical record that is without any obvious gaps that would require remand. *Swiantek*, 588 Fed.Appx. at 84.

In particular, D.T.'s medical records include, *inter alia*, the February 25, 2020 and June 8, 2020 assessments of the State agency consultants, Dr. Sinha, AR at 56-57, and Dr. Stout, AR at 67-68, which, as discussed, Discussion, *supra*, at 13, constitute substantial evidence on which the ALJ was permitted to rely. The ALJ also relied on treatment notes from D.T.'s physician, Dr. Yu and Niagara Street Pediatrics, AR at 19-20 (referencing AR at 581-676), Oishei Children's Hospital, *id*. (referencing AR at 372-

502), progress notes and the IEP Reports from the Buffalo City School District, *id*. (referencing AR at 215-26, 324-371), and D.T.'s teachers' reports.  *Id*. (referencing AR at 299-306).  The ALJ considered this information in determining that although D.T. "has a significant medical history dating back to childbirth," AR at 20, the evidence in the "record suggests significantly improved functioning."  *Id*. at 20-24 (citing pediatric progress notes from Niagara Street Pediatric and Oishei Children's Hospital as well as reports concerning D.T.'s progress with her IEP).  The ALJ also listed activities in which D.T. engaged as establishing she is not at least markedly limited in the domain of moving about and manipulating objects, including D.T.'s teacher reporting on September 20. 2018, that D.T. is able to cut with scissors in a line, AR at 25 (citing AR at 221), and in June 2020 that D.T. had made great strides in her ability to write, AR at 25 (citing AR at 251-52).  In short, Plaintiff has failed to demonstrate any gap in the record requiring a further medical opinion, and Plaintiff's Motion is denied on this ground.

Plaintiff further argues the ALJ did not adequately explain his finding that D.T. has a less than marked limitation in the fifth functional equivalency domain of caring for herself.  Plaintiff's Memorandum at 15-18.  In opposition, Defendant argues the ALJ properly assessed the domain of caring for oneself and such assessment did not support a marked limitation in the domain.  Defendant's Memorandum at 17-22.

As with the functional equivalency domain of moving about and manipulating objects, the ALJ relied on the opinions of State agency consultants Dr. Sinha, AR at 56-57, and Dr. Stout, AR at 67-68, which, as discussed, Discussion, *supra*, at 13, constitute substantial evidence on which the ALJ was permitted to rely.  In particular, both Dr.

Sinha and Dr. Stout rated D.T.'s limitation in the domain of caring for herself as "less than marked," citing D.T.'s 2018-2019 school year IEP progress report which noted D.T. has "some difficulty with personal care related items."  AR at 56 (Dr. Sinha) and AR at 68 (Dr. Stout).  Significantly, in finding these two opinions consistent, the ALJ recognized, but was not persuaded by teacher opinions that D.T. has no limitation in this domain.  AR at 25 (citing AR at 1074).  The ALJ's determination with regard to this domain is also consistent with the finding in the 2018-2019 school year IEP report that D.T. is able to manipulate her pants to use the bathroom but does continue to have difficulty manipulating fasteners.  AR at 331-32.  Accordingly, the ALJ's determination that Plaintiff has less than a marked limitation in the fifth domain of caring for herself is supported by substantial evidence in the record.

To summarize, in the instant case, despite the absence of a medical source statement and function-by-function assessment of D.T.'s functional limitations, the ALJ's RFC assessment is supported by substantial evidence in the record, and Plaintiff has not sustained her burden of establishing that no reasonable factfinder could have reached the same conclusion as the ALJ based on the evidence of record.  *See Henderson v. Comm'r of Soc. Sec.*, 2019 WL 3237343, at ** 7-8 (W.D.N.Y. July 18, 2019) (sustaining the ALJ's materiality finding where the plaintiff "has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record." (citing *Brault*, 683 F.3d at 448)).  Because the ALJ's determination that D.T. is not markedly limited in at least two of the functional equivalent domains, or extremely limited in any one such domain, is supported by substantial evidence in the record, the

ALJ's decision must be upheld.  Accordingly, judgment on the pleadings should be DENIED as to Plaintiff and GRANTED as to Defendant.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED.  The Clerk of Court is DIRECTED to CLOSE the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     February 21, 2024
               Buffalo, New York